**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **1:26-cr-00179-SLS** |
| | ) | |
| v. | ) | **Status: August 11, 2026** |
| | ) | **10:45 a.m.** |
| **DANIEL PATRICK HUGHES** | ) | |
| | ) | |

### <u>DEFENDANT'S APPEAL OF DETENTION ORDER</u>

Defendant Daniel Hughes, through the undersigned attorney, respectfully requests that this Court review the Detention Order by the Honorable G. Michael Harvey issued on or about July 31, 2026. After three days of hearings on the government's motion for detention,[1] Magistrate Judge Harvey granted the government's motion last week and set a status hearing before this Court on August 11, 2026 11:45 a.m. The defense respectfully asks that the Court hear this appeal to review and overturn Magistrate Judge Harvey's detention order at the scheduled status hearing next week.

Mr. Hughes is indicted on one count of distribution of child pornography, ECF 14, based upon a single video that he sent to an undercover officer during electronic communication exchanges. Mr. Hughes has (1) significant connections to the community, (2) zero criminal history, and (3) no risk of flight.[2] He never intended – and took no actual steps – to meet with the UC and the UC's fictitious child ward. This is a case about problematic thoughts and non-contact role playing exacerbated by the sending of one apparently unlawful video obtained from the internet or a third-party. While the electronic communications are disturbing, the distribution of the single

---

[1] The hearings occurred July 28, 29, and 31, 2026. The government obtained its indictment on July 30, 2026.

[2] Before the Magistrate Judge, the government advised that it was proceeding solely on a risk of danger theory and not a theory of risk of flight. The Magistrate Judge rejected detention based upon flight. To focus the appeal, counsel addresses dangerousness, not flight, in this filing.

image and the context of the messages do not carry the government's burden to prove by clear and convincing evidence that Mr. Hughes' detention is necessary to ensure the safety of the community. To the contrary, the Court can fashion conditions of release that mitigate any such risk.

Specifically, the following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure the safety of the community.

- Home incarceration with electronic monitoring at the home of his parents in Farmville, Virginia in Prince Edward County, Virginia in the Eastern District of Virginia;

- Third party custodian – his father, who is retired and can be home all day;

- Home visits by Eastern District of Virginia Pretrial Services;

- No use of electronic devices or the internet in any form, – all contact with legal counsel will be by telephone or in-person with advance permission by pretrial services to travel to attorney meetings;

  o Access of electronic devices will be prevented and monitored by the third-party custodian;

- Remain at home unless for verified court, pretrial services, legal, or medical appointments, which must be approved in advance by pretrial services;

- No contact with any minor children, including his eighteen-month-old son;

- Report on a "regular basis" to PTS or some other agency as directed, *id*. § 3142(c)(1)(B)(vi);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

## I.    Background

Mr. Hughes was arrested on July 23, 2026 pursuant to a criminal complaint charging him with distribution of child pornography. The complaint concerns a conversation between Mr.

Hughes and an undercover law enforcement officer (UC) that began on June 30, 2026 on an online messaging platform.[3] During the conversation, Mr. Hughes expressed interest in meeting the UC and her fictitious niece. Mr. Hughes supposedly agreed to the UC's suggestion to meet at a bar on July 6th and then return to an Airbnb to meet the fictitious niece. He never planned to attend that meeting. On July 6, Mr. Hughes and his wife (since estranged) had prior dinner plans. He picked up their son from daycare shortly after 4:00 p.m., went grocery shopping for what his wife wanted him to make for dinner, arrived home, made dinner, and had dinner with his wife. Mr. Hughes did not appear for the purported July 6 meeting.

Mr. Hughes next supposedly agreed to meet the UC on July 21st. While making those so-called plans, he pretended to be out of town and unable to make a flight. In truth, he again was in Virginia, picked up his son at daycare shortly after 4:00 p.m., ordered and obtained take-out meals for his wife and he, and had dinner at home with his wife. Mr. Hughes did not appear for the purported July 21 meeting. He continued to text on July 21 and July 22 that he had been unable to make a flight and to continue electronic communications. The UC did not reply. He was arrested on July 23.

During the electronic communications, the UC asked Mr. Hughes to show the fictitious niece what might happen at a meeting. Mr. Hughes inquired about sending adult pornography and the UC repeatedly requested child pornography instead. Ultimately, Mr. Hughes apparently sent a

---

[3]The app, Hush, is commonly used by individuals for a variety of connections and communications, the vast majority of which are non-criminal in nature. The app, not the users themselves, independently assigns user names to users. Internet research shows that the app is also known for being buggy, with multiple pop-up ads, and crashing. Communications also occurred on Snap Chat and Telegram.

single child pornography video that appeared made and downloaded overseas.[4] In continued text messages with the UC, Mr. Hughes told the UC that he would not send any more child pornography videos unless the UC sent him a child pornography video that depicted the UC's fictitious niece. The UC never sent such a purported video. Mr. Hughes also asked for clothed photographs of the UC and her fictitious niece, which were sent.

During the electronic communications, the UC repeatedly asked Mr. Hughes to bring a gift for the fictitious child – specifically suggesting certain types of stuffed animals and/or a certain type of candy bar (Kit Kat). Mr. Hughes never purchased those items. Mr. Hughes never packaged those items to bring to the UC and the fictitious child. Mr. Hughes never brought those items. Mr. Hughes never intended to meet with the UC and the fictitious child.

During the electronic communications, the UC told Mr. Hughes that she herself first experienced sex when she was a child by an adult relative. The UC asked Mr. Hughes if he was interested in incest porn. Mr. Hughes concurred such an interest for purposes of continuing the electronic communications. The UC asked Mr. Hughes if he would ever have sex with a child of his own, and Mr. Hughes texted that he would. Mr. Hughes has no interest in sex with his own child and has never had inappropriate sexual contact with his child or any child.

The electronic communications with the UC were arousing for Mr. Hughes. They led him to ask his wife if she wanted to have sex when he got home on July 6. They led him to masturbate and to send videos of himself masturbating to the UC. The UC had suggested to Mr. Hughes that he say the name of the fictitious child when he masturbated. Mr. Hughes complied, saying the name in the videos that he sent to the UC.

---

[4] The criminal complaint against Mr. Hughes describes the video; defense counsel has yet to review the message to confirm it constitutes CSAM. For purposes of this hearing, the defense does not dispute that the video constitutes CSAM. The video does not depict Mr. Hughes himself.

During the electronic communications, the UC asked Mr. Hughes if he had ever been with a child before. Mr. Hughes made up a story. He texted the UC that he was in a sexual relationship with a woman, that the mother's minor child just happened to walk in on Mr. Hughes and the adult sexual partner having sex, and then, with the mother's encouragement, the child joined them in having sex. This was a fictious story. Mr. Hughes has never had sexual contact of any kind with a child. He never had sex with a mother and her child. Mr. Hughes has never had a sexual relationship with a woman who had a child (before his wife and he had their son).

Mr. Hughes sent one video of CSAM. He never traveled to meet the UC. He has never had sexual contact with any child. The evidence is that his engagement with the UC was for inappropriate electronic communications to advance his imagination, fantasy, and fictitious mental role. He is currently held on the basis of the single above-referenced video and the broader context of the other communications.

## II.    Legal Standards

On a motion to review a detention order, this Court considers *de novo* the Magistrate Judge's detention decision. *See* 18 U.S.C. § 3145(a); *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021); *United States v. Blackson*, No. 23-cr-25-BAH, 2023 U.S. dist. LEXIS 18988, at *15 n.2 (D.D.C. Feb. 6, 2023) (collecting decisions from other circuits).

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the *least restrictive* further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B) (emphasis added). The U.S. Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*,

481 U.S. 739, 755 (1987); *see United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.).  "It is only a 'limited group of offenders' who should be [detained] pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405.

Under 18 U.S.C. § 3142(e)(3)(E) a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community. Where the presumption applies, the Bail Reform Act imposes a "burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Such a burden is "not heavy" and only requires the production of "some evidence." *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

Even in cases where a rebuttable presumption applies, it is ultimately the government's burden to demonstrate by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence for Mr. Hughes to be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the

danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

### III.     Mr. Hughes Can Rebut the Presumption of Detention with Credible Evidence

Mr. Hughes can rebut the presumption of detention with "some credible evidence" that there are conditions which would reasonably assure his appearance and the safety of the community. First, Mr. Hughes has strong ties to the community. Mr. Hughes was born in Northern Virginia and graduated from high school in Northern Virginia. He attended and graduated college in Virginia. After college, he has worked in this area for the past decade. Mr. Hughes lives in Arlington, Virginia where he has a wife, child (an eighteen-month-old son), and a job he has held for seven years.  Mr. Hughes, who is thirty-five years old, also has zero criminal history.

The foregoing facts rebut the presumption of detention in this case.

### IV.     The Government Cannot Meet Its Burden to Demonstrate that Mr. Hughes is a Danger to the Community

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*Munchel*, 991 F.3d at 1282-8 (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that defendant must pose actual danger to community, not that defendant in theory poses danger to the community). The government has not and cannot meet its burden here, and Mr. Hughes should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably d protect the public.

**V.     The § 3142(g) factors support release**

*A.     The Nature and Circumstances of the Offense*

The Indictment charges Mr. Hughes with one count of distribution of child pornography. While the charge and allegations are undoubtedly serious, there is no evidence that Mr. Hughes engaged in any violence toward any minor or engaged in anything other than fantasizing with an adult. The allegations all stem from a conversation with an undercover officer. There is no allegation of any improper contact with any minor child. There is no allegation of any attempted direct contact with any minor child. Mr. Hughes' current detention stems from one single video sent only at the UC's multiple requests.

*B.     The Weight of the Evidence*

The weight of the evidence does not provide clear and convincing evidence that Mr. Hughes would be a danger to the community. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp.3d 55, 66 (D.D.C. 2018). The evidence is strong that Mr. Hughes engaged in conversations with a UC and sent them a video that appears to depict a minor. But given all the allegations rest on a single video, the evidence to support pre-trial detention is lacking.

*C.     The History and Characteristics of Mr. Hughes*

As described above, Mr. Hughes has lived in the D.C. area for a long time. He built his life here and has no intention or desire to be elsewhere. His wife and child are here. His job is here. Mr. Hughes has no criminal history, let alone a history of dangerousness. As suggested below, Mr. Hughes will be on electronic monitoring if released and under the supervision of a reliable, trustworthy third-party custodian. Mr. Hughes will live at his parents' home – away from his own son and any children—and will help with physical work around the home. He needs to try rebuild his life after these allegations to regain the trust and support of his family and to be able to work

meaningfully with his defense counsel to defend against the case. The safety of the community can be reasonably assured with these conditions.

Mr. Hughes' history and characteristics do not provide any support for a finding that he is a danger to the community. There are conditions that will reasonably assure his appearance, and Mr. Hughes should be released.

>    D.    *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Hughes' Release*

The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Hughes would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Hughes poses an *unmitigable* threat to public safety.

The government may argue that Mr. Hughes could commit another crime if he had access to electronic devices during his pretrial release. Mr. Hughes' proposed conditions of release specifically deal with this concern, by depriving his access to devices and requiring that his family maintain the security of their devices by changing passcodes and keeping them locked up or with them when they are not in the home. There is no evidence that Mr. Hughes would refuse to comply with these specific conditions of release. Without access to the internet or electronic devices, the government's concerns about dangerousness evaporate.

Having now been arrested and detained for his conversation with the UC, it is simply impossible that Mr. Hughes will ever have be granted the privacy and presumption of good faith he was previously afforded by his family. Unlike in the past, they will now be closely monitoring

9

his behavior for any signs of deception. If Mr. Hughes seeks to access the internet or violate his release conditions in any way, his custodian will know, and he will report him.

The government has not provided sufficient evidence for the Court to find that no combination of conditions could reasonably ensure the safety of the community, so he should be released.

**VI.    Statistics Showing that It Is Extremely Rare for Defendants on Bond to Recidivate Demonstrate that Mr. Hughes Does Not Pose Danger to the Community**

In this case, this Court can be guided by Administrative Office of the Courts' statistics showing that nearly everyone released pending trial does not reoffend. In fact, in 2019, 98% of released federal defendants nationwide did not commit new crimes on bond.[5] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[6] Even in districts that release two-thirds of all federal defendants on bond, just over 2% are rearrested while released.[7] The far-right columns of the below chart reflects this data:

---

[5] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[6] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* AO Table H-14A.

[7] *See* AO Table H-15; AO Table H-14A.



### Federal Clients on Bond Rarely Flee or Recidivate (2019 Data)

VII.    **Mr. Hughes Should Be Released Because There Are Conditions That Will Reasonably Assure Safety**

Mr. Hughes should be released because there are conditions that will reasonably assure the safety of the community. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community.'" *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. Thus, Mr. Hughes cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure the safety of the community.

- Home incarceration with electronic monitoring;

- Home visits by federal pretrial supervision;

- Third party custodian – his father, who has no criminal record, is retired, and who is home full-time;

- No use of electronic devices or the internet in any form, – all contact with legal

counsel will be by telephone or in-person with advance permission by pretrial services to travel to attorney meetings;

- o   All access of electronic devices will be monitored by the third-party custodian;

- No contact with children;

- Remain in home confinement, unless for verified court, pretrial services, legal, or medical appointments, which must be approved in advance by pretrial services;

- Report on a "regular basis" to PTS or some other agency as directed, *id.* § 3142(c)(1)(B)(vi);

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id.* § 3142(c)(1)(B)(viii);

- Refrain from "excessive use of alcohol," *id.* § 3142(c)(1)(B)(ix); and

- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id.* § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure the safety of the community, he should be released.

## VIII.   Conclusion

For the foregoing reasons, Mr. Hughes respectfully requests that this Court release him with conditions.

Respectfully submitted,

/s Edward J. Ungvarsky
Edward J. Ungvarsky, Bar No. 459034
Ungvarsky Law, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
DC : 202 546 1500
VA : 571 207 9710
Cell : 202 409 2084
Email : ed@ungvarskylaw.com
Counsel for Daniel Hughes

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Appeal of Detention Order was served on the government, via electronic filing, on this 4th day of August, 2026.

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky