**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **1:26-cr-00179-SLS** |
| | ) | |
| **v.** | ) | **Hearing: August 11, 2026** |
| | ) | **11:15 a.m.** |
| **DANIEL PATRICK HUGHES** | ) | |
| | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFEDANT'S APPEAL OF DETENTION ORDER**

Defendant Daniel Hughes, through the undersigned attorney, respectfully replies to the government's opposition to his appeal of the detention order (ECF 18). The defense respectfully submits that it has met the low threshold of "some evidence" to rebut the presumption of detention and that there are conditions and combinations of conditions that will reasonably assure the safety of the community such that the government has not carried its clear-and-convincing evidence burden of proof to justify Mr. Hughes' pretrial detention based on danger to the community.

The defense does not have access to Judge Boasberg's position in *United States v. Reid*, 25-CR-311 that "it is important to consider where the defendant's behavior falls on the spectrum of conduct commonly seen in child exploitation cases." ECF 18 at 12. The defense does not disagree with the government's representation of Judge Boasberg's position or the sentiment expressed. And each case, and each defendant, is entitled to an individualized detention decision.

The charge and evidence here fall on that part of the spectrum that counsels in favor of release. A cursory review of PACER, for example, quickly illustrates release orders in four recent distribution and coercion cases, presided over by four different district judges in this district, in which the Court identified conditions of release that ensured the safety of the community and ordered the defendants released. *See, e.g.*, *United States v. Green*, 1:25-cr-00310-LLA (defendant

sent at least seven CSAM videos and received at least thirty-two CSAM videos of prepubescent or younger male children on Telegram and Signal);[1] *United States v. Pavel,* 1:25-cr-00277-SLS (defendant distributed multiple CSAM images to another adult using Telegram and arranged to meet in person with that other adult; and message attached to last distributed video stated, "God I wanna cum in this kids face so badly");[2] *United States v. Rehman*, 1:23-CR-64-CN (thirty-three-year-old defendant charged with coercion and enticement in violation of 2422(b) for soliciting and receiving CSAM and meeting up in person and having sex with fifteen-year-old girl);[3] *United State Taylor*, 1:22-CR-215-BAH (charged with attempted production of child pornography, enticement of a minor, receipt of child pornography, transfer of obscene material to a minor, and possession of child pornography, defendant had Snapchat relationships with twelve-year-old boy and fourteen-year-old boy, including soliciting them to send, and receiving, CSAM images).[4]

Here, Mr. Hughes is alleged to have distributed *one* CSAM video within the context of electronic communications with an undercover officer about a purported meeting with that undercover officer and a fictitious child purportedly to have sex with the fictitious child. The content of the conversations is uncorroborated by any real evidence because Mr. Hughes never intended to meet with the officer, never intended to meet with the fictitious child, and never intended to have sex with the fictitious child. It was talk, not more. Mr. Hughes' language in the texts relate to a sexual interest in children, which makes his language ugly. This is how conversations with persons talking about child exploitation read. That does not mean that courts

---

[1] Chief Judge Boasberg ordered Mr. Davis's release on September 5, 2025. Mr. Davis has been on release without issue and is not set for a September 5, 2026 change of plea hearing.

[2] Mr. Patel was released on September 9, 2025, and a pretrial order was issued on May 28, 2026, with trial set for November 9, 2026. Mr. Patel has been on release without issue throughout this time.

[3] Mr. Rehman remained on release for almost two years until after his entry of his guilty plea.

[4] Mr. Taylor remained on release throughout his case until sentencing.

are then powerless to prevent a defendant – particularly one with no prior or other crimes record – to act upon the words in the future.

Mr. Hughes' father is retired after a long career. His father and mother lived in the Eastern District of Virginia with no children in or visiting the home. His father is aware of the evidence. His father is ready to be a third-party custodian. He will not allow Mr. Hughes any access to the internet. Mr. Hughes will be on GPS monitoring and will not be able to leave the property. Mr. Hughes will be subject to spot home inspections by pretrial supervision of the EDVA. He will not have a phone.

The arrest is a break in Mr. Hughes' thinking and conduct – as well as a flashing warning light to his (now estranged) wife and his parents. They now know to keep him completely away from the internet and children. That will be done. As for Mr. Hughes, he has every incentive to follow all pretrial rules. His incentive comes not just from his arrest but from the nature of his pretrial detention. His response to this case led Magistrate Judge Harvey to put in a medical alert for potential suicide ideation. Mr. Hughes was placed in NO.2, a maximum-security classification when first at the DC Jail. There, he was personally threatened.[5] He sought to be moved to a unit that fit his own, much lower classification, or to CTF, or if not either of those, to be placed in protective custody. He has remained in protective custody since. The conditions there are extreme. With very limited exception, he does not get inside or outside recreation; he does not have a tablet; he does not have access to phone calls to his family; he is max-shackled hands, arms, and legs whenever outside of his tiny cell – including legal visits. His cell mate is white (like Mr. Hughes) and yells the n-word and racial epithets at other inmates as they pass the cell. Other inmates have

[5] Counsel was aware of general threats and later learned of one direct threat.

threatened his cell mate and seem to associate Mr. Hughes with his cellmate, making Mr. Hughes feel endangered even in protective custody.

The government's concerns that Mr. Hughes will re-access the internet when on release are speculative at best. He is disincentivized to talk with other adults on the internet about CSAM given that the adult he spoke to ended up as an undercover officer. He has never sought to talk with children on the internet about CSAM. Mr. Hughes will not risk the return to jail and this situation if given release to his parents' home. There, he will do work around the property for his parents to save them from those chores and physical labor, seek out and obtain mental health and sex offender treatment, and assist his counsel in defending his case

**Conclusion**

There is no logical reason to assume that Mr. Hughes will act to violate his conditions of release and that, with all conditions in place, his father will be unable to ensure his compliance. The defense asks the Court to reverse the Magistrate's order of detention and release Mr. Hughes under condition and conditions that will reasonably assure the safety of the community.

Respectfully submitted,

/s Edward J. Ungvarsky
Edward J. Ungvarsky, Bar No. 459034
Ungvarsky Law, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
DC : 202 546 1500
VA : 571 207 9710
Cell : 202 409 2084
Email : ed@ungvarskylaw.com
Counsel for Daniel Hughes

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply was served on the government, via electronic filing, on this 7th day of August, 2026.

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky